Ms. Shearer Not a problem I ever have pulling down a microphone I'm envious Good morning your honors I represent the four police officers who have been sued in this case from the city of Cambridge and as you know we've appealed asserting a number of errors of law committed by the district court and these errors are first the refusal of the district court to grant the officers federal qualified immunity, second the refusal of the district court to limit plaintiff's award for the unlawful entry to nominal damages, and third the trial court's errors with respect to the jury instructions that were and were not given to jury. With respect to qualified immunity the jury's verdict sheet, which is in the record at 1091, indicates that the officers violated Andrew Cornish's constitutional rights by failing properly to knock on an ounce before entering Cornish's apartment. So it's our contention that the verdict sheet can only be read to mean that the officers knocked an ounce at Mr. Cornish's apartment door, but that they failed to wait a sufficient amount of time before entering. What would the jury have checked if they thought that they did not knock an ounce at all? That was the only form of the question on the verdict sheet. If they thought there was no knocking an ounce at all, they would have checked that box. So then how do we know which it is that they saw? The reason we know is based on the evidence and then also based on jury note three. So it's not about the form. The form doesn't tell us what the jury thought. The form really doesn't tell us because it says failed properly to knock an ounce. Do you object to the form? It seems to me that the burden was on your clients to establish their defense of qualified immunity. Did they ask for a specific jury form that would have allowed us to answer this question, what the jury thought happened? No, Your Honor. I don't believe either party asked the court to do that. But it would have been, I mean, the other party wouldn't have asked. The other party would have had no reason to make to put forth a special jury form that would have allowed you to make your case, right? The burden was on you. The burden for qualified immunity is on us. That's correct, Your Honor. Okay. Understandably, this is what the verdict said and this is what the jury checked. But we know the meaning of what the jury checked based on the evidence and, as I said, based on jury note three. So the evidence is the testimony by the... That's correct, Your Honor. Jury note three... Jury note three shows that what was in the jury's mind was whether the officers waited a reasonable amount of time before entering the apartment. Jury note three asked the court, does the legal start time for the waiting period begin at the front exterior door? So they wanted to know from the judge whether the wait time began at the front door of this house or at the apartment. The question didn't say anything about wait time, did it? Am I reading from the wrong page? Does the knock and announce legally start at the exterior door or at the apartment door? Exactly. Okay, so it doesn't mention wait time. No, it says does the knock and announce start, but I think... I think that's important because there's nothing about this note that suggests that the jury was thinking about wait time. They just wanted to know where do you have to knock. Well, that's... That's one way of looking at it, but I think it's certainly a reasonable inference that that means there... If you don't have a special verdict, a special interrogatory to answer the question and you've got more than one possible answer and there's no evidence in the record to support that answer... Well, there is no evidence... Well, no. There was testimony from the people who lived downstairs that they didn't hear anything upstairs. They would be able to hear things upstairs. That's what they said. You may not believe them, but the jury might believe them. There was no non-speculative evidence to dispute the officer's testimony that they knocked and announced. Ms. Camper testified that she was asleep or half-asleep when the officer testified that the only noise she heard was some footsteps running up the stairs just before the boom. Then police were inside her apartment hollering and shouting and creating a big commotion trying to secure the two of them. So, there's all this commotion going on in her house, and Camper testifies that she did not hear the police break open Cornish's apartment door with a sledgehammer, nor did she hear the two gunshots. We know both of those things occurred, and she still didn't hear them. So, the fact that she didn't hear the knock and announce by the officers at the upstairs apartment door while we know all this commotion was going on in her own apartment is not material evidence that would dispute the officer's testimony that they did knock and announce. Judge Legg thought that there was material evidence to send this to a jury, right? And I think he talked not only about the testimony that the downstairs neighbors hadn't heard the knock and announce at Cornish's door, but also the evidence that they were synchronized. The plan was to do synchronized identical entries, and the neighbors also had not heard a knock and announce at their door. And when you put all of that together, Judge Legg thought, well, that's enough to go to a jury on, right? The plan was to do synchronized knocks and announces at each apartment, but that plan did not come to fruition, because when the police arrived to execute the search warrants, the front door was locked. So they knocked and announced at the front door, and there's no material, non-speculative evidence to dispute that. Well, the fact that someone would say, I usually don't lock that door, doesn't dispute the officer's testimony that when they arrived that day, the door was locked. They knocked and announced, and they breached that door with a battering ram, a 25-pound battering ram. Well, the residents of the downstairs apartment, Mr. Ladding and Mr. Ladding, they didn't hear the knock and announce at the front door, and they didn't hear the battering ram knock it down. They claim they didn't hear the knock and announces at their own door, and you know, I mean, they also say they were asleep, so the inference is they didn't hear it because they were asleep. It's not that it didn't happen. Ms. Shearer, I don't want to tell you how to structure your argument. But if you are, if you perceive perhaps that you're not making a tremendous amount of headway on this one, do you have other arguments you would like to present? Yes, Your Honor. Also, we assert... Sorry, I don't mean to cut off. No, if there's any other questions about the qualified immunity, I think there's no question that the law was not clearly established in May 2005 as to what was required of a reasonable wait time. And also, I think... But that assumes that the wait time is a positive issue. That's correct, Your Honor. Why don't you tell us about proximate cause? Right, I'll move on to proximate cause. In this case, we assert that the district court erred in refusing to limit the plaintiff's damages to nominal damages only. And the basis for that argument is the lack of legal proximate causation between the unlawful entry and the lawful shooting of Mr. Cornish by Officer Brian Lewis. And so, the background here is that the district court, prior to Mr. Kane's first appeal to this court, which was dismissed for lack of jurisdiction, Judge Benson Legg held that Mr. Cornish's misapprehension could not... I think we know that. Okay. Well, our proximate causation argument is based on case law from other circuits. The issue has not been addressed in this circuit, except that in this court's unpublished opinion, when it remanded the case for lack of jurisdiction, this court stated that the district court's limitation of wrongful death damages to nominal damages, and Kane's voluntarily abandoning his estate claim, merely foreclosed the possibility of his recovering a certain type of damages. And then this court went on to state... Okay. The cases we rely upon are from the 3rd, the 6th, the 9th, and the 10th circuits. The 3rd circuit case is Warwick v. Bodine, and that was a case that was decided in 1995. And in that case, the court noted law holding that like a tort plaintiff, a Section 1983 plaintiff must establish both causation in fact and proximate causation. And the cases hold that under basic principles of tort law, the officers are liable only for the harm proximately or legally caused by the failure to knock an ounce, and not for harm caused in the philosophic or but-for sense. What is your argument with respect to these facts? Regarding the lack of proximate cause? The officers... Well, we assert that Mr. Cornish is attacking the police with a knife is the superseding cause of his death, and so we also have a jury verdict where the jury says the shooting death of Mr. Cornish was not wrongful, so there's no wrongful death. You can't recover for wrongful death when the death itself is lawful and not wrongful. Is that a proximate cause argument? It is in this case because the jury determined that the entry was unlawful, so the question is what damages can the plaintiff recover for that unlawful entry? And there's many cases that have held that only nominal damages will follow in a situation such as ours where the occupant responds by attacking the police and is killed by a police officer defending himself from that attack. And you can't find that without a proximate cause analysis? Well, it's either a lack of legal proximate cause, or like I said, Mr. Cornish is the superseding cause of his own death, and so in Warwick v. Bodine, the court stated that... the restatement second of torts and relied upon that to delineate the basic tort principles that show that just because it's foreseeable in this kind of general sense doesn't mean that it follows legally and proximately that the entry caused the death. I thought that case was distinguishable, or arguably distinguishable because there was no suggestion there that the person who attacked the police didn't know he was attacking the police, that he didn't know he was dealing with the police. And I understand the argument in this case to be, no, no, this one's different because in this case the jury could reasonably have found that until the moment he died, Cornish, who had been awakened at 430 in the morning, people bursting into his apartment, didn't understand that he was dealing with the police. He ran out there with a knife because he thought he was confronting unlawful intruders in his home. And that makes this case different because that kind of result is more foreseeable than someone deciding to attack the police. Well, I'm not sure that it matters legally whether the occupant knows or doesn't know it's the police, but in this case, Judge Legg held before his rulings were reversed by Judge Motz, Judge Legg held, and we submit he correctly held, that there's no material evidence to dispute the officer's The evidence that's there is that they're yelling to identify themselves as police, they're yelling police search warrant. The evidence is that they're wearing all sorts of police narcotics gear that say police. No, the evidence is that it was well lit. The kitchen light was on. The kitchen light's kind of like in the center of the apartment. He didn't know that. Visibility must have been somewhat limited. It all happened very quickly. It's hard to see what's going on. The officer took a sheath knife or an open knife and it's all happening very fast and the conditions for visibility aren't fabulous. Otherwise, clearly, the officer could have told the difference between a knife and a sheath and a knife that's not a sheath. Well, there was also light coming from a television that was on in the living room. Judge Legg, in its finding, and this is a very odd procedural posture to me, found that Kane couldn't recover actual, that there could be no actual damages because a reasonable juror would have to find that Cornish knew he was advancing on police with a knife prior to the shooting and that the decision to do so constituted a superseding cost of death. What do we make? How does that inform our analysis? Well, I'm not sure that it does, Your Honor. I think he attacked Officer Lewis and... Did you hear my question? Yes, ma'am. Okay. I'm asking you don't think that the First District Court's finding in your favor is useful? Yes. That's why I cited the Judge Legg's ruling. Yeah, but she said it doesn't inform our analysis. That was why I was wondering. Oh, okay. My time is up, I see. My answer? Yes. There's no evidence to dispute that he had to have known that it was the police in his apartment, and we don't know what he really thought because he's not alive to testify, but it does inform the analysis. I didn't mean to say that it does not. Okay. Thank you very much. We have some time reserved for rebuttal. May it please the Court? I represent Andrew Cain. I would like to just jump in for the last question and indicate that Judge Legg's decision does not inform this Court's analysis. And the reason for that is that Judge Motz rescinded that decision. And so it's off the table. And Judge Motz... But it's in the record. Maybe in the record, Your Honor, but Judge Motz made the decision and he had the authority, which is not challenged on appeal, to rescind that decision. In his view, at least implicitly, it was a factual question. Just as he thought that the excessive force issue was a factual question for the jury to decide. And Judge Motz's authority is not questioned here on appeal. So it's really off the table. And it's a matter of interest. I think, if you want to dwell on that, I could just say this. Judge Legg thought that the survival claim, that there was a claim for emotional harm that Mr. Cornish may have experienced up until the time he was shot, I found that to be contradictory to the... You withdrew that. We withdrew that. We did, and we did so because... You wanted to be able to appeal. Correct. Exactly so. Let me tell you the problem that I have with the damage award. The court's charge to the jury asked them to determine whether the amount of force used was that which a reasonable officer would have employed under similar circumstances. I'm reading, so that is the charge. And the jury's verdict found in favor of the officers. Pursuant to that charge. That charge tells us that the amount of force was non-tortious. So what's the 200... How is the damages award sustainable as a... If the amount of force was appropriate? Let me answer that question. First of all, there can be more than one constitutional violation that causes an injury. And I think that's clear from the Bodine case. That the court in Bodine and the Third Circuit said... I understand that, but on these facts. Okay. Let me explain why that is. The jury could have said, we're not persuaded that this was an excessive use of force for the following reason. That this officer... We're not going to second guess the officer's use of deadly force here because this may have been very, very quick and he's... We can't find that. Based on... It's rather... Just as it would be difficult for us to read... Try to read the minds of the jury on what was troubling them about the knock and announce. We have to go by what the jury decided when they resolved the question whether the amount of force was that which a reasonable officer would have employed under similar circumstances. I'm trying to... But I think if... I don't think... I don't see how you can get to... Let me... Permit me to finish. Absolutely. What I'm saying is they could have logically concluded that they were unwilling to second guess the officer's use of force because this was a quick situation. He may have come out with a knife in his sheet but they were unwilling to second guess that use of force but they concluded and there was evidence to support this that there was another violation that put the officer and Mr. Cornish in this deadly encounter, a violent encounter, which the purpose of the rule, the knock and announce rule, is to avoid. And so they could have concluded that the knock and announce rule was violated and that it was a proximate cause of the shooting. In other words, they could reject this idea that my opponent alleges, which is based upon the excessive force verdict, somehow or another she derives from that that the jury thought that Cornish knew and intentionally attacked the officers. The jury was free from the evidence to find to the contrary that contrary to that, he did not know that he was dealing with the police. This is 430 in the morning. The evidence supports a finding that they did not knock and announce. So he is confronted, the officer is confronted by someone who is coming to the door quickly. Maybe the jury did believe that he had a sheathed knife in his possession, but that they were not willing to second guess the officer's use of force, but that does by no means mean that Mr. Cornish knowingly attacked the police. The cases are not always easy to distinguish, but it sounds like sometimes your argument goes more to but for the fact that they had not wrongfully entered by failing to observe the knock and announce rule, then this chain of events would not have been set into motion. However, you do have this intervening event, whether it's Mr. Cornish who is advancing on the officer and the question then comes up, well, is that event either for and proximal cause, or was that a superseding act that caused it? You might want to address that, because it seems like the follow-on... It follows on Judge Duncan's question that with the wording of the jury instructions, it seems reasonable to conclude that it was at least a superseding cause. I think that's a jury question. The jury was properly instructed on proximate cause. It's a jury question. The jury had facts before it to conclude that there was no knock and announcement, and that Mr. Cornish approached the door not knowing it was the police. And therefore, that the cause, the legal cause of his death, was the failure to knock and announce. He was shot on the spot. Of course, you know, that the officers told a different version. Their version was they knocked and announced at Cornish's door, penetrated all the way back to Mr. Cornish's door, bedroom door, kicked on that door, the door flew open, knocked the point man down, and then Mr. Cornish came out of that room with a knife over his hand, yelling, and the officer backed all the way up to the kitchen. The jury had evidence to dispute that version. They had evidence there was no knock and announce at all, that Cornish in his shorts probably heard the crash of his door and jumped up and went, grabbed a knife if he did, or immediately to the front door and was shot on the spot by the officer who was a skilled marksman, shooting him not in center mass where he said he aimed, but in the head. Because they could have said, look, we're not going to second guess the officer's use of force here, because in our view, under that scenario, he faced an imminent threat to his life. We're not going to second guess that use of force. But we do find that there was a knock and announce violation. This explains as is approximate cause of the death of Cornish, because it happened very quick, right there, three feet from the front door. He's responding to the door, which has been crashed in, and that's how this incident happened. Can I ask you a question about excessive force? Because I want to make sure I understand the law in this area. As I understand it, certainly in the Fourth Circuit, in deciding whether the officer used excessive force, you only look at the moment the gun was fired. I remember the defendants argued it this way in front of the jury. They said it's a snapshot. You look only at the snapshot, that one moment when the gun is fired. It would not have been proper for the jury, in considering the use of force, to consider how the police got themselves in a situation where it was required that they use force, right? I think that's exactly correct. They would have had a situation where they're saying, look, we're only supposed to look at the situation when he fired the shot. Look, when he fires the shot, this man is right on him. He could have possibly reasonably thought his life was in danger. Therefore, we're not going to second-guess that use of force. However, they could say, look, there was a clear violation of the knock-and-know principle here that we find, and that's what led to this encounter. That's what got Mr. Cornish shot, because he's coming to the door not knowing it's the police. He's coming to the door with a knife, let's say, not knowing it's the police, and ends up getting shot. In our brief, it's interesting, we quote from an old, old case where the Supreme Court in the concurring opinion talks about this scenario where someone shoots someone they think is a prowler coming into their house, and the judge says, how can you blame that resident if there's no notice of who's coming into the house? And that's the whole purpose of this knock-and-announce rule, to protect life and limb for safety, to ensure that things like this don't happen, that the officer is not mistaken for an invader, a home invader. This is to protect the officer, this is to protect the resident. And that's, since that rule was violated, it follows the jury had sufficient evidence to say this is not just but-for, it's an actual controlling factor, it's foreseeable that someone that the officers don't knock-and-announce, someone could approach the door, be viewed as an imminent threat, and be shot. So that, I think, clearly the jury had that evidence before them, and could find that it was a proximate cause. Failure to knock-and-announce was a proximate cause. And that there was no superseding cause, as you're arguing. That is, Cornish's conduct was not a superseding cause because, under the restatement, if the actor's conduct creates the risk which causes the injury, it's not a superseding cause. That is... Yeah, it can be. Yeah, I mean, it's... It is still possible that something else intervenes that influences... It's possible. If the jury... Correct. If the jury had found the officer's version of events, I think they could have found that clearly... But all we have is failure to properly knock-and-announce, and the excessive force finding. Those are the only two things we're working with here. Right. That's correct. But we have a whole lot of evidence here what the jury could... I think the court has to respect, did the jury have sufficient evidence to find what I am asserting here was found, the type of violation which occurred? And... Can I ask a question? Oh, please. Can I just ask... Sure. We're moving on just a little bit. I have sort of a procedural question that has actually been unclear to me about this case. So there's one verdict in this case for $250,000? There's a verdict both on federal constitutional violation and a state kind of for $250,000. Correct. And that sort of merges both of those violations? Yes. Okay, so I'm just trying to figure out if this may affect which issues we need to reach in writing an opinion. So if there was no immunity for the defendant on either the federal claim or the state claim, right, just assume... I'm totally making this up, but let's say they are not immune on the federal claim but they are immune on the state claim. They would still be liable for the full $250,000? Right. They would be liable for the $250,000. Now the municipality is a little bit different situation because there is a cap, a Maryland cap on their liability of $200,000 and Judge Motz recognized that, amended the judgment to that effect. But if the officers were not immune in their personal capacities under the statute and you say they are not, would they be liable for the extra $50,000? We're talking about the state law claim. Because the plaintiff, your client, could win the full $250,000 if there was no immunity either on the state claim or no immunity on the federal claim. Right. I mean, I think the question is, well, if the state, if they also have immunity under the state law claim, what is the effect? I mean, still the federal claim would permit a judgment of $250,000. I believe that's the, and then I think that I guess the only other issue perhaps to address would be the jury instructions. I believe that the jury instructions were legally correct as the court gave them. The court emphasized the fact that the manner of the, in which the search was conducted had to be reasonable. That the court, when given the jury note, indicated that the knocking announcement must take place at the inner door, which makes very good sense in this particular case. And I think that for those reasons, for all those reasons, the judgment should be affirmed below. Thank you very much. Ms. Shearer, you have some time for rebuttal. Mr. Roberts said that the approximate cause question was a jury question. And I believe that's incorrect. I believe it's a legal question. And I think that if the jury believed what Mr. Roberts says they believe that the use of force was justified and lawful. And so I think that there were a lot of ifs in his argument about what the jury might have believed or might have thought or what their verdict about the use of force could mean. But I think that if you look at the evidence without any speculation, the only thing the jury's verdict could have meant is that Andrew Cornish, they believe that Andrew Cornish came flying out of the master bedroom, swinging a knife over his head, charging at Officer Brian Lewis. That Officer Brian Lewis yelled at him more than once, drop the knife, drop the knife. He didn't drop the knife. Officer Lewis backed into the barber's chair in the kitchen. He couldn't retreat any further and he quickly fired two shots. Can you, I mean I asked your opposing counsel the same question, but I was struck by the argument that you all made at trial. That when you look at excessive force, it's a snapshot. It's one moment in time. You're only looking at the moment the gun was fired. So if that's right, and obviously it is right under Fourth Circuit law, then why isn't it plausible that the jury could find both that the police did something terribly wrong getting themselves into this situation. There was a wrong. They got themselves into a situation where someone comes running to the door at four in the morning, has no idea what's going on, thinks he's under attack, and is in fact in that moment a threat to the officer. The officer's just standing there and there's someone with a knife. And so in that moment, in that snapshot of time, it's reasonable for the officer to defend himself, but they're not looking back at how the police got themselves in this position where it was foreseeable that someone awakened without a knock and announced that they think he's under attack. Why don't, given that argument about the snapshot in time, why don't they stick together? Well, because established case law is that you're not supposed to look at the antecedent conduct of the police, and you can't argue that they created the danger. So, I agree. That's my point. In determining the excessive force claim, but doesn't it follow from that that lots of stuff could have happened before that snapshot that is chargeable to the police and that did cause the situation? I think, like I said, you can't charge them with creating the situation leading to the use of force, but more to the... Isn't it equally... The problem is we don't really know. If the officers responded appropriately to the knife, it also means that the police officers had to see a knife, that there was a knife, and it also means that under the factual scenario, if they could see a knife, surely Cornish could see that they were police officers because they were in full riot gear. There's a lot we don't know, so we're sort of stuck with the jury instruction, what the jury instruction tells us. I'd agree. And whether or not there's proximate cause and superseding cause, etc. Well, the jury instruction and the jury's verdict sheets show that they believe that the shooting was non-tortious. And so there's no proximate legal cause between the unlawful entry and the shooting. You can say it's a cause in fact, but it's not proximate cause, and I think Mr. Roberts talks about foreseeability, but you can't just say that it's foreseeable if they don't knock and announce that someone could get hurt because that's not legal proximate cause, and the other circuits have so held. Thank you. Thank you very much, Ms. Shurer. Thank you. We will ask Mr. Coleman to adjourn court for the day and come down in group council. This honorable court stands adjourned until tomorrow morning at 8.30. Godspeed, Madam State, and this honorable court.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris